## *William Nailor *against* William French.  [*241

Where one has lived and traded here for some years, and then sails as a super-cargo to the West Indies, carrying with him four fifths of his property, and making a partial assignment of one fifth for the benefit of his creditors here, and there engages in new business, and is wholly silent in his letters about his return for nine months, his property is subject to foreign attachment, though he expressed an intention when he sailed, of returning in twelve or eighteen months at furthest.

RULE to shew cause, why the foreign attachment issued in this cause on a promissory note, should not be dissolved. The writ had been sued out on the 17th December 1804, returnable on the second return day of the last December term.

It appeared in evidence, that the defendant had served his apprenticeship with William Sitgreaves, in Philadelphia, twelve years ago, and after its expiration was some time his partner, and then traded for himself. He had a wife and children in the city, but from some family disagreement, lived separate from them for five or six years. He sailed as supercargo in the brig Hiram to the West Indies, having property on board to the amount of $30,000. Immediately previous thereto, on the 1st December 1804, he executed an assignment of all his property (excepting what he had on board the brig) amounting to between $7000 and $8000, to William Fleming, in trust, for the use of his creditors in Philadelphia. He then declared his intentions of returning to the city in 12 or 18 months at furthest. Two other attachments were laid on the defendant's effects, in which like rules to shew cause were obtained. Of these attachments the defend-

ant was duly apprised by letters from his assignee; but though he acknowledged the receipt of the letters, he said nothing of his return in his answers. Two other letters from him, dated in February last, were also shewn by the plaintiff's counsel, wherein there was a perfect silence as to his return. A gentleman saw the defendant at Cape Francois, and also at Gonaives, in February 1805, and understood from him, that he did not intend to return soon to the continent; and the common report in both places was, that he had undertaken new commissions, and meant to establish himself in business in the West Indies.

Mr T. Ross in support of the rule, contended, that French must be considered an inhabitant of the state, within the true meaning of the attachment laws. He had been actually resident here many years, had a wife and children, and had gone on occasional business to the West Indies in prosecution of his mercantile character. He not only avows no intention of changing his domicil, but expresses his design of returning within a limited period. His engaging in new business was not incompatible with his *animus revertendi*, and he might well persevere in his intentions without making them the subject of his correspondence. He might trust to the justice of his country, that his effects would not be permitted to be attached illegally. The creditors took out their attachments within seventeen days after *he had sailed, and those writs must either be good or bad when they issued. At this period it could not be pronounced that he had no intention of returning when the object of the voyage was completed.

Messrs. Gibson and Meredith *e contra*. This is a contest between creditors and a debtor. The assignment will have its legal effect. There is no controversy between the different plaintiffs and the assignee.

The object of the legislature in passing the act of 4 Anne c. 28, was to subject the effects of absent debtors to the payment of their debts; as it appears by the preamble, that they were not before that time equally liable with the effects of those persons who resided on the spot. Lazarus Barnet's case, 1 Dall. 152. Taylor and Finlayson *v.* Knox *et al.*, Ib. 158. Lyle *v.* Foreman, Ibid. 480. The defendant carried with him to St. Domingo the bulk of his property, having made a partial and inadequate assignment for his Philadelphia creditors. He left no funds here to discharge his other debts. What other steps could his creditors take for the recovery of their just demands? Process of summons would not lie against him, as he was no freeholder, and had no place of abode within the state. He could not be arrested, because his body could not be found. To found a domestic attachment, it is indispensably necessary that oath should be made that he had absconded with intention to defraud his creditors. Would it be consistent with the policy of

[Bond *v.* Olden.]

the laws or any sound principle, that under these circumstances the creditors should be without remedy ?

He cannot be deemed an inhabitant, in any sense of the word. He has transplanted himself to a foreign country, with four fifths of his property, there to seek his fortunes ! He has undertaken new business, and declared he does not mean soon to return ! Though the intercourse between this port and St. Domingo is so frequent, not one solitary letter is produced from French announcing his intentions of returning to this city.

BY THE COURT. The only question is, whether William French, the defendant, is an inhabitant of the state, in contemplation of law, within the true spirit of the attachment acts ?

Whether he can be considered such, or not, must be evinced by his individual acts, which certainly countervail any loose expressions. He has sailed to St. Domingo, and carried with him four fifths of his property. He has engaged in trade in the West Indies, and for nine months and upwards, has been wholly silent about his return. His leaving a wife and children in the city is of no weight in this case, since he has been separated from them *for five or six years. It cannot fix his domicil. Though [*243 we do not profess to fix any general rules, as to what will constitute an inhabitancy within the meaning of our attachment laws, we have no hesitation in saying, that the circumstances in this case abundantly shew, that the defendant cannot be deemed an inhabitant of the state, and therefore the rule must be discharged.